ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
REX D. GARNER, ESQ.
Nevada Bar No. 9401
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144
Telephone:  (702) 634-5000
Facsimile:  (702) 380-8572
Email:   ariel.stern@akerman.com
         rex.garner@akerman.com

*Attorneys for Nationstar Mortgage LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC,<br><br>                            Plaintiff,<br><br>v.<br><br>VEGAS PROPERTY SERVICES, INC.;<br><br>                            Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Nationstar Mortgage LLC (**Nationstar**) complains as follows:

**PARTIES AND JURISDICTION**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Nationstar is a citizen of Delaware and Texas and on information and belief none of the defendants is a citizen of Delaware and Texas. The amount in controvery exceeds $75,000.00.

2. Nationstar is a Delaware limited liability company. Nationstar's members are Nationstar Sub1 LLC (**Sub1**) and Nationstar2 LLC (**Sub2**). Both Sub1 and Sub 2 are Delaware limited liability companies. Sub1 and Sub2 are both wholly-owned by Nationstar Mortgage Holdings, Inc. (**NSM**). NSM is a corporation formed pursuant to the laws of the state of Delaware with its principal place of business located in Lewisville, Texas. Nationstar is a citizen of the states of Delaware and Texas for purposes of diversity of citizenship. The diversity of citizenship requirement is met. *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082 (9th Cir. 2014). Defendant Vegas Property Services, Inc. (**VPS**) is not, on information and belief, a citizen of Delaware or Texas, but is a Nevada corporation with its principal place of business in Nevada. The

1

amount in controversy requirement is met. Nationstar seeks a declaration its deed of trust, which secures a loan with a principal balance of $81,694.94 was not extinguished by a homeowner's association non-judicial foreclosure sale that is the basis for VPS's claim to title to the real property *sub judice*.

3. Defendant VPS is, on information and belief, a Nevada corporation. After a reasonable search, Nationstar alleges, on information and belief, that VPS is a citizen of Nevada for diversity purposes. Nationstar is informed and believes and therefore alleges VPS purchased the property from the Court-appointed Receiver of FGC SFR Holdings LLC on October 31, 2015 following foreclosure sale by and on behalf of Canyon Willow Tropicana (Canyon Willow East Unit 1) Owners' Association (**the HOA**).

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 for reasons stated above.

5. Venue is proper in this Court under 28 U.S.C. § 1391. The property that is the subject of this action is located at 5710 East Tropicana Avenue, #2106, Las Vegas, Nevada 89122 (the **property**). Venue is proper in this Court under 28 U.S.C. § 1391(1) and (2) because this action seeks to determine an interest in property located within Clark County, Nevada and because this lawsuit arises out of a foreclosure of real property located within Nevada.

## GENERAL ALLEGATIONS

6. Under Nevada state law, homeowners' associations have the right to charge property owners residing within the community assessments to cover the homeowners' associations' expenses for maintaining or improving the community, among other things.

7. When these assessments go unpaid, the association may impose a lien and then foreclose on a lien if the assessments remain unpaid.

8. NRS Chapter 116 generally provides a non-judicial foreclosure scheme for a homeowners' association to conduct a non-judicial foreclosure where the unit owner fails to pay its monthly assessments.

9. NRS 116.3116 makes a homeowners' association lien for assessments junior to a first deed of trust beneficiary's secured interest in the property, with one limited exception: a

homeowners' association lien is senior to a first deed of trust beneficiary's secured interest "to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien[.]" NRS 116.3116(2)(c).

The Deed of Trust and Assignment

10. On or about February 24, 2000, Barbara J. Esses (**Esses**) purchased the property. Esses financed ownership of the property by way of a loan in the amount of $83,850.00 evidenced by a note and secured by a deed of trust recorded February 24, 2000. A true and correct copy of the senior deed of trust is recorded with the Clark County Recorder as **Instrument No. 20000224-0001728**. This deed was later reconveyed on January 18, 2007.

11. On January 5, 2007, a new deed of trust (the **senior deed of trust**) was recorded as **Instrument No. 20070105-0001699** to secure a note signed by Esses on December 13, 2006 for $83,000.00.

12. The deed named Mortgage Electronic Registrations Systems, Inc., (MERS) as nominee for the lender, and the lender was Moneyline Lending Services, Inc.

13. On August 22, 2008, a second deed of trust (the **second deed of trust**) was recorded as **Instrument No. 20070822-0005361** to secure a home equity line of credit entered into by Esses for $50,000.00. The lender was Bank of America, N.A.

14. The senior deed of trust was assigned to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Clark County Recorder as **Instrument No. 201105120000353**.

15. The senior deed of trust was assigned to Nationstar via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Clark County Recorder as **Instrument No. 201305070000709**.

The HOA Lien and Foreclosure

16. On October 10, 2008, the HOA recorded a notice of claim of delinquent assessment lien. Per the notice, the amount due to the HOA was $1,819.10, but does not specify what portion is assessments, dues, interest, fees, or and collection costs. A true and correct copy of the notice of lien is recorded with the Clark County Recorder as **Instrument No. 20081010-0001529**.

17. On August 26, 2009, the HOA, through its agent Nevada Association Services, Inc. (**NAS**), recorded a notice of delinquent assessment lien. The notice stated the amount due to the HOA was $3,890.89, but does not specify what portion is assessments, dues, interest, fees, or collection costs. A true and correct copy of the notice of delinquent assessment lien is recorded with the Clark County Recorder as **Instrument No. 200908260002804**. The notice also does not specify the superpriority amount claimed by the HOA and fails to describe the "deficiency in payment" required by NRS 116.31162(1)(b)(1).

18. On October 20, 2009, the HOA, through its agent NAS, recorded a notice of default and election to sell to satisfy the delinquent assessment lien. The notice stated the amount due to the HOA was $5,020.79 as of October 14, 2009, but does not specify what portion is assessments, dues, interest, fees, or collection costs. A true and correct copy of the notice of default is recorded with the Clark County Recorder as **Instrument No. 200910200002125**. The notice of default also does not specify the superpriority amount claimed by the HOA.

19. On October 29, 2009, the HOA, through its agent NAS, recorded another notice of default and election to sell to satisfy the delinquent assessment lien. The notice stated the amount due to the HOA was $5,020.79 as of October 27, 2009, but does not specify what portion is assessments, dues, interest, fees, or collection costs. A true and correct copy of the notice of default is recorded with the Clark County Recorder as **Instrument No. 200910290003001**. The notice of default also does not specify the superpriority amount claimed by the HOA.

20. On March 16, 2010, the HOA, through its agent NAS, recorded a notice of trustee's sale. The trustee's sale was scheduled for April 23, 2010. The notice states the amount due to the HOA was $6,290.64. A true and correct copy of the notice of sale is recorded with the Clark County Recorder as **Instrument No. 201003160001280**. The notice of sale does not identify the

4

superpriority amount claimed by the HOA and fails to describe the amount necessary to satisfy the lien required by NRS 116.311635(3)(a).

21. On November 29, 2012, the HOA, through its agent NAS, recorded another notice of trustee's sale. The trustee's sale was scheduled for December 28, 2012. The notice states the amount due to the HOA was $11,657.19. A true and correct copy of the notice of sale is recorded with the Clark County Recorder as **Instrument No. 201211290001246**. The notice of sale does not identify the superpriority amount claimed by the HOA and fails to describe the amount necessary to satisfy the lien required by NRS 116.311635(3)(a).

22. On July 31, 2013, the HOA, through its agent NAS, recorded another notice of trustee's sale. The trustee's sale was scheduled for August 23, 2013. The notice states the amount due to the HOA was $13,290.79. A true and correct copy of the notice of sale is recorded with the Clark County Recorder as **Instrument No. 201307310003827**. The notice of sale does not identify the superpriority amount claimed by the HOA and fails to describe the amount necessary to satisfy the lien required by NRS 116.311635(3)(a).

23. In none of the recorded documents nor in any notice did the HOA or its agent NAS provide notice of the purported superpriority lien amount, where to pay the amount, how to pay the amount, or the consequences for failure to do so.

24. In none of the recorded documents did the HOA or its agent NAS identify the amount of the alleged lien that was for late fees, interest, fines/violations, or collection fees/costs.

25. In none of the recorded documents nor in any notice did the HOA or its agent NAS specify whether the HOA was foreclosing on the superpriority portion of its lien, if any, or on the sub-priority portion of its lien.

26. In none of the recorded documents nor in any notice did the HOA or its agent NAS specify the senior deed of trust would be extinguished by the HOA's foreclosure.

27. In none of the recorded documents nor in any notice did the HOA or its agent NAS identify any way by which the beneficiary under the senior deed of trust could satisfy the superpriority portion of the HOA's claimed lien.

28. On information and belief, had Nationstar or anyone else attempted to tender the amounts due under the HOA's claimed lien, the HOA or its agent would have rejected the attempted tender.

29. The HOA foreclosed on the property on or about November 1, 2013. A foreclosure deed in favor of FGC SFR Holdings LLC was recorded November 18, 2013. A true and correct copy of the foreclosure deed is recorded with the Clark County Recorder as **Instrument No. 201311180000254**.

30. The foreclosure deed recites the sale price at the November 1, 2013 foreclosure sale was $9,100.00. The HOA's sale of the property for approximately 11% of the value of the unpaid principal balance on the senior deed of trust, and, on information and belief, for a similarly diminutive percentage of the property's fair market value, is commercially unreasonable and not in good faith as required by NRS 116.1113.

31. The Securities and Exchange Commission brought an action in the United States District Court for the District of Columbia against Lawrence P. Schmidt, Futuregen Company, and other related entities, under which the assets of FGC SFR Holdings LLC were frozen, including its interest in the property.

32. On October 31, 2015, FGC SFR Holdings LLC, through its Court-appointed Receiver, sold the property to VPS. A true and accurate copy of the quitclaim deed is recorded with the Clark County Recorder as **Instrument No. 20151113-0003223**.

## FIRST CAUSE OF ACTION

### (Quiet Title/Declaratory Judgment)

33. Nationstar repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

34. Pursuant to 28 U.S.C. § 2201 and NRS 30.040 *et seq.*, this Court is empowered to declare the rights of parties and other legal relations of parties regarding the property.

35. An actual controversy has arisen between Nationstar and defendant regarding the property. The senior deed of trust is a first secured interest on the property. As a result of the HOA

6

sale and subsequent quitclaim deed, VPS claims an interest in the property, and on information and belief, claims to own the property free and clear of the senior deed of trust.

36. Nationstar's interest in the senior deed of trust encumbering the property constitutes an interest in real property.

37. Nationstar is entitled to a declaration that the HOA's foreclosure did not extinguish the senior deed of trust, or, alternatively, the HOA's foreclosure is void.

*NRS Chapter 116 Violates Nationstar's Right to Procedural Due Process*

38. Nationstar asserts that Chapter 116 of the Nevada Revised Statutes' scheme of HOA superpriority non-judicial foreclosure violates Nationstar's procedural due process rights under the state and federal constitutions.

39. The Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution protect Nationstar from being deprived of its deed of trust in violation of procedural due process guarantees of notice and an opportunity to be heard.

40. Nationstar asserts that there is no way to apply Nevada's scheme of non-judicial HOA superpriority foreclosure that complies with Nevada and the United States' respective guarantees of procedural due process.

41. The Nevada Constitution does not expressly set forth a state action requirement. Even if it did, and consistent with the state action requirements of the Federal Constitution, the state of Nevada has become sufficiently intertwined with HOA foreclosure such that state and federal procedural due process protections for Nationstar's deed of trust apply, to wit:

    a) The superpriority lien did not exist at common law, but rather is imposed by statute.

    b) In order to conserve governmental resources and fund the quasi-governmental HOA, Nevada's legislature made superpriority mandatory, expanded the superpriority duration from six to nine months, and declared it could not contractually subordinate its lien by provisions within a HOA's covenants, conditions, and restrictions.

    c) The superpriority lien has no nexus whatsoever to a private agreement between the The HOA and Nationstar, but, again, is imposed by legislative enactment.

7

   d) Nevada and Clark County mandated the creation of the HOA as a quasi-governmental entity to perform governmental functions including maintaining the common open spaces and private streets within the HOA community.

42. Since the state of Nevada is responsible for the creation of the superpriority lien and has made it mandatory, then the state of Nevada's HOA superpriority foreclosure scheme is the result of state action subject to procedural due process safeguards.

43. On its face, Nevada's scheme of non-judicial HOA superpriority foreclosure lacks any pre-deprivation notice requirements or post deprivation redemption options that are necessary components of due process:

   a) NRS 116.31162 and NRS 116.311635 do not require that an HOA provide Nationstar with written notice of the sum that constitutes the superpriority portion of the assessment lien.

   b) Chapter 116 of NRS seeks to insulate its scheme of superpriority non-judicial foreclosure by failing to provide any post-sale right of equity or redemption.

   c) Chapter 116 of NRS fails to provide Nationstar with a statutorily enforceable mechanism to compel an HOA to inform Nationstar of the sum of the HOA superpriority amount.

44. Nationstar requests that this Court void the HOA foreclosure sale or declare that any party taking title from the HOA, including VPS, acquired title subject to the senior deed of trust because NRS Chapter 116's scheme of HOA superpriority foreclosure violates the procedural process clauses of the Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution.

*Additional Reasons the HOA Foreclosure Sale Did Not Extinguish the Senior Deed of Trust*

45. The HOA sale is void or did not extinguish the senior deed of trust for additional reasons stated below.

46. The foreclosure sale did not extinguish the senior deed of trust because the recorded notices, even if they were in fact provided, failed to describe the lien in sufficient detail as required by Nevada law, including, without limitation: whether the deficiency included a "superpriority"

component, the amount of the superpriority component, how the superpriority component was calculated, when payment on the superpriority component was required, where payment was to be made, or the consequences for failure to pay the superpriority component. Alternatively, the foreclosure sale is void.

47. The foreclosure sale did not extinguish the senior deed of trust because, on information and belief, the HOA or its agent NAS would have rejected any tender of the amounts entitled to superpriority and Nationstar or its predecessors in interest were not required to make a futile attempt to tender. Alternatively, the foreclosure sale is void.

48. The foreclosure sale did not extinguish the senior deed of trust because the sale was commercially unreasonable or otherwise failed to comply with the good faith requirement of NRS 116.1113 in several respects, including, without limitation, the lack of sufficient notice, the sale of the property for a fraction of the loan balance or actual market value of the property, a foreclosure not calculated to promote an equitable sales price for the property or to attract proper prospective purchasers, and a foreclosure sale that was designed or intended to result in maximum profit for The HOA and its agent without regard to the rights and interest of those who have an interest in the loan and made the purchase of the property possible in the first place. Alternatively, the foreclosure sale is void.

49. The foreclosure sale did not extinguish the senior deed of trust because otherwise the sale would violate Nationstar's rights to due process, as a result of the HOA's failure to provide sufficient notice of the superpriority component of the HOA's lien, the manner and method to satisfy it, and the consequences for failing to do so. Alternatively, the foreclosure sale is void.

50. The foreclosure sale did not extinguish the senior deed of trust because otherwise the sale would violate Nationstar's rights to due process, as a result of the HOA's improper calculation of the superpriority component and its inclusion of charges that are not part of the superpriority lien under Nevada law. Alternatively, the foreclosure sale is void.

51. The foreclosure sale did not extinguish the senior deed of trust because neither FGC SFR Holding LLC nor VPS qualifies as a bona fide purchaser for value, because they were aware of, or should have been aware of, the existence of the senior deed of trust and the commercial

1 unreasonableness of the HOA sale. Alternatively, the foreclosure sale is void.

52. Nationstar is entitled to a declaration, pursuant to 28 U.S.C. § 2201, NRS 30.040, and NRS 40.010, that the HOA sale did not extinguish the senior deed of trust.

53. Nationstar was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Injunctive Relief)

54. Nationstar repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

55. Nationstar disputes VPS's claim to own the property free and clear of the senior deed of trust.

56. Any sale or transfer of the property by VPS, before a judicial determination concerning the respective rights and interests of the parties to this case, may be rendered invalid if the senior deed of trust still encumbers the property in first position and was not extinguished by the HOA sale.

57. Nationstar has a substantial likelihood of success on the merits of the complaint, and damages would not adequately compensate for the irreparable harm of the loss of title to a bona fide purchaser or loss of the first position priority status secured by the property.

58. Nationstar has no adequate remedy at law due to the uniqueness of the property involved in this case and the risk of the loss of the senior security interest.

59. Nationstar is entitled to a preliminary injunction prohibiting VPS, or its successors, assigns, or agents, from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust.

60. Nationstar is entitled to a preliminary injunction requiring VPS to pay all taxes, insurance and homeowner's association dues during the pendency of this action.

## PRAYER FOR RELIEF

Nationstar requests the Court grant the following relief:

1. An order declaring that VPS purchased the property subject to Nationstar's senior deed of trust;

2. In the alternative, an order that the HOA foreclosure sale, and any resulting foreclosure deed, was void *ab initio*;

3. A preliminary injunction prohibiting VPS, its successors, assigns, or agents from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust;

4. A preliminary injunction requiring VPS to pay all taxes, insurance, and homeowner's association dues during the pendency of this action;

5. Reasonable attorneys' fees as special damages and the costs of suit; and

6. For such other and further relief the Court deems proper.

DATED February 27, 2017.

**AKERMAN LLP**

*/s/ Rex D. Garner*

ARIEL E STERN, ESQ.
Nevada Bar No. 8276
REX D. GARNER, ESQ.
Nevada Bar No. 9401
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Plaintiff Nationstar Mortgage LLC*